## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**ANDERSON LIVING TRUST f/k/a The**
**James H. Anderson Living Trust, et al.,**

      **Plaintiffs,**

**v.**                             **CIV 12-0352 JCH/KBM**

**ENERGEN RESOURCES CORPORATION,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Energen Resources Corporation's Motion to Dismiss Plaintiffs' Complaint for Underpayment of Oil and Gas Royalties. Having reviewed the parties' submissions and the relevant law, the Court finds the Motion is well-taken and will therefore grant the Motion.

### Background

Plaintiffs are owners of hydrocarbon interests within the State of New Mexico. *See* Doc. 1-1 at ¶¶ 1-5. Pursuant to leases granted to Defendant Energen Resources Corporation ("Energen") or its predecessors in interest, Energen owns and operates (or previously owned and operated) 28 oil and gas wells covering Plaintiffs' interests in San Juan and Rio Arriba counties. *See id.* at ¶ 22. Plaintiffs contend that Energen owes them a duty to pay royalties.

> Under its oil and gas leases, Energen owes Plaintiffs a duty
> to pay royalties on all hydrocarbons, including drip
> condensate, produced from each of Plaintiffs' wells, for the
> value/price which is/should be received by Energen upon
> an arm's length sale of said hydrocarbons. Energen also
> owes a duty to market Plaintiffs' natural gas and all other
> produced and/or processed hydrocarbons at the highest
> obtainable price and to account for and pay each Plaintiff
> accurately for its proportionate interest in the proceeds

> received from the Plaintiffs' share of hydrocarbons from
> Plaintiffs' specific well(s).  There is no agreement or
> provision in Plaintiffs' leases or any other agreement which
> allows Energen to co-mingle proceeds of sales from other
> wells' production, resulting in Plaintiffs receiving an
> "average" or "pooled" price applied to their wells'
> production.

*Id.* at ¶ 10.  Plaintiffs also contend that their interests in the hydrocarbons produced from

these wells are non-cost-bearing.  *See id.* at ¶ 8.

Specifically, Plaintiffs assert claims for breach of contract (Count I), fraud (Count

II), breach of the duty to market hydrocarbons (Count III), violation of the New Mexico

Oil and Gas Proceeds Payment Act (Count IV), bad faith breach of contract (Count V),

unjust enrichment and declaratory judgment (Count VI), and conversion (Count VII).

*See generally* Doc. 1-1.

## Legal Standard

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  "[T]he mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe that

*this* plaintiff has a reasonable likelihood of mustering factual support for these claims."

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis

in original).  Dismissal is not appropriate if the complaint contains "enough facts to state

a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).)  Although

the Court must assume the truth of the properly alleged, or "well-pleaded," facts in the

Complaint, the Court has no obligation to accept conclusory allegations as true.  *See Cory*

*v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

<u>Analysis</u>

Defendants argue Plaintiffs' Complaint should be dismissed in its entirety for

failure to state a cognizable claim.  *See generally* Doc. 4.

**I.      Plaintiffs Have Not Sufficiently Alleged Either the Existence or Breach of
         Any Specific Contract; Therefore, Count I Will Be Dismissed.**

The elements of a breach of contract claim are "the existence of the contract,

breach of the contract, causation, and damages."  *Abreu v. N.M. Children, Youth and*

*Families Dep't*, 797 F.Supp.2d 1199, 1247 (D.N.M. 2011) (citing *Camino Real Mobile*

*Home Park P'ship v. Wolfe*, 119 N.M. 436, 442, 891 P.2d 1190, 1190 (1995)).  Despite

Plaintiffs' identification of specific wells, Defendant argues that Plaintiffs cannot state a

cognizable claim because they have not identified specific leases.  *See* Doc. 4 at 3-4.

Failure to plead specific contract terms is critical in this case, according to Defendant,

because the primary issue is the calculation of royalties, and the method of calculating

royalties is controlled by the contract royalty clause.  *See id.* at 4.

Plaintiffs dispute Defendant's contentions, yet they allow for the possibility that

Defendant Energen is not the full owner of the leases in question, may not have been a

party to Plaintiff's original leases, or may not presently own or operate wells on those

leases.  *See* Doc. 1-1 at ¶¶ 8 (referencing leases "owned or partially owned by Energen");

9 (describing leases as executed "to Energen, or its predecessor(s)"); 22 ("Energen and/or

its predecessors-in-interest own or owned oil and gas leases covering the Plaintiffs'

mineral, royalty and/or overriding royalty interests, which leases are now owned or operated or were previously owned and/or operated by Energen"). Elsewhere in their Complaint, Plaintiffs appear unsure of Defendant Energen's exact role with regard to the wells in question. *See id.* at ¶¶ 20 (referencing wells "drilled, operated, and/or produced currently or in the past, in whole or in part, by Energen"); 21 ("Energen and/or its predecessors and affiliates were/are the operator and/or producer, and in addition, in many instances, the past and/or present first purchaser of production, the gatherer, transporter and/or processor of gas and operator of the class wells").

Although they do not identify the specific leases at issue, Plaintiffs do identify 28 wells which are at issue. *See* Doc. 1-1 at ¶ 22. In a very general way, Plaintiffs also describe the contractual duties they contend that Defendant owes. They claim that "Energen owes a duty of proper payment to non-cost bearing owners under its oil and gas leases." *Id.* at ¶ 7. Such a duty includes a duty to pay royalties on "drip condensate," which "is normally recovered downstream of the wellhead facility measurement point prior to processing." *See id.* at ¶¶ 10, 24. Moreover, royalties are to be calculated "for the value/price which is/should be received by Energen upon an arm's length sale of said hydrocarbons." *Id.* "Energen also owes a duty to market Plaintiffs' natural gas and all other produced and/or processed hydrocarbons at the highest obtainable price and to account for and pay each Plaintiff accurately for its proportionate interest in the proceeds received from the sale of Plaintiffs' share of hydrocarbons from Plaintiffs' specific well(s)." *Id.* Although no language from the leases in question is provided, Plaintiffs contend that "[t]here is no agreement or provision in Plaintiffs' leases or any other agreement which allows Energen to co-mingle proceeds of sales from other wells'

production, resulting in Plaintiffs' receiving an 'average' or 'pooled' price applied to their wells' production." *Id.*

Similar to their description of the alleged duties at issue, Plaintiffs also very generally describe the alleged breaches of contract by Defendant Energen.  Royalties on drip condensate have not been paid, according to Plaintiffs, because "Energen has continually failed to credit revenues to Plaintiffs representing the value of the said produced drip condensate."  *See* Doc. 1-1 at ¶ 25.  Plaintiffs also contend that "[o]ther volumes of natural gas *may* be used or consumed 'in the field' by Energen or its assignor and not reported (or paid) to Plaintiffs."  *Id.* (emphasis added).  Plaintiffs do not identify any occasions on which Energen failed to pay or credit revenues or improperly consumed gas in the field.  Nor do Plaintiffs identify specific individuals who may have been involved.  There are no references to particular payments that were not properly calculated, and there is no factual narrative explaining why Plaintiffs believe that any breach of contract occurred.  In short, there are no facts from which the Court could conclude that Plaintiffs have stated a plausible claim for breach of contract.

The Western District of Oklahoma recently granted a motion to dismiss a breach of contract claim in a very similar case, noting

> that to state plausible claims for breach of oil and gas leases by breach of the duty to market implied therein under *Twombly, supra,* [p]laintiffs must identify or describe their individual leases in which [d]efendant … is the lessee or successor lessee or attach copies thereof and describe the royalty terms thereof so as to raise the existence of leases between the individual [p]laintiffs and [d]efendant … and alleged breach by [d]efendant of the implied duty to market and thus [p]laintiffs' right to relief beyond the speculative level.

*Hitch Enter., Inc. v. Cimarex Energy Co.*, 859 F. Supp.2d 1249, 1257 (W.D.Okla. 2012) (quoting *Chieftain Royalty Co. v. Dominion Okla. Texas Exploration & Prod., Inc.*, No. CIV-11-344-R (W.D.Okla., July 14, 2011) (unavailable on Westlaw)). While it may not be necessary for parties to attach a copy of the subject contract in every case, the nature of the parties' relationship and the contractual method of calculating royalties together with some facts in support of the alleged breach should be clearly set forth.

Defendant in the present case relies upon *Parrish v. Nat'l Football League Players Assn.*, 534 F.Supp.2d 1081, 1094-95 (N.D. Cal. 2007). Plaintiffs in that case were retired NFL players who sought benefits of the defendant's group licensing agreements (GLAs), or agreements with third parties to license images, likenesses, and names of retired players. 534 F.Supp.2d at 1086-87. Defendant successfully moved to dismiss the complaint because the plaintiffs had not alleged that they had signed GLAs within the four-year statute of limitation. *See id.* at 1088. The court in *Parrish* held that although the complaint contained language from three different GLAs, the plaintiffs "never alleged that any of them signed that particular form of agreement." *Id.* at 1095. Thus, the plaintiffs in *Parrish* failed to allege the existence of a contract.

Defendant also refers the Court to an unpublished decision from this District, *Armijo v. State*, Case No. CIV 08-0336 JB/ACT, 2009 WL 1329192 (D.N.M., Apr. 6, 2009), wherein the Court dismissed a claim for breach of employment contract. The Court noted that the Plaintiff had failed to plead facts alleging "to what his employment contract entitles him or of what the Department deprived him." *Id.* at *7. In other words, the Plaintiff "fail[ed] to lay out a minimal factual narrative to apply in reaching [the pled] legal conclusions." *Id.*

Although the present case involves slightly different facts, the principles in *Parrish* and *Armijo* apply nonetheless. Like the plaintiffs in *Parrish*, Plaintiffs in the present case have failed to identify applicable contractual language governing the alleged duties and breaches. As a result, it is not clear what, if any, contractual duties are owed. Just as the plaintiff in *Armijo*, Plaintiffs in the present case have not pled a factual narrative to support their claims for relief.

II.     **Plaintiffs' Allegations of Fraud Do Not Satisfy the Requirements of FED. R. CIV P. 8(a)(1) or 9(b), and Count II Must Therefore Be Dismissed.**

Plaintiffs allege "fraud and misstatement of gas and affiliate sales." *See* Doc. 1-1 at 9. Plaintiff is required to "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Therefore, "[t]he complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Heavy Petroleum Partners, LLC v. Atkins*, 457 Fed.Appx. 735, 742-43 (10th Cir. 2012) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)). Put another way, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The Complaint in the present case focuses upon the monthly statements Plaintiffs received from Energen, which allegedly failed to disclose "the gross volume of gas produced from Plaintiffs' wells, the gross revenue or value attributed to the gross production, as well as all reductions and/or deductions and costs to Plaintiffs which are

reducing Plaintiffs' revenues from the point of an arms-length sale." *See Doc.* 1-1 at ¶ 34. According to Plaintiffs, "[s]uch actions constitute fraudulent concealment and a willful violation of Energen's legal duties … to correctly inform Plaintiffs of all production and revenue information that affects the revenues and value/price received by Plaintiffs for their gas production." *Id.* at ¶ 34. Specifically, Plaintiffs claim that Energen has sold or transferred Plaintiffs' hydrocarbons to its affiliates, "who have co-mingled the gas from Plaintiffs' wells with others and used said affiliate sale or transfer as the basis for payment of the amounts owed to the Plaintiffs." *Id.* at ¶ 29. This, Plaintiffs contend, causes Energen's affiliates to "realize a higher value for the hydrocarbons than is reported to Plaintiffs." *Id.* Based upon these allegations, Plaintiffs request that the Court "order Energen to account for all values and revenues received from the first arm's length sale of gas and other hydrocarbons associated with each Class well." *Id.* at p. 11.

The Court finds Plaintiffs' allegations of fraud do not contain the required particularity nor sufficient allegations to render the claim plausible. Plaintiffs do not plead any dates or involved parties and do not provide the contents of any specific misrepresentation. Moreover, the Court finds it clear from Plaintiffs' request for data going back to the first arm's length sale of hydrocarbons from each well that Plaintiffs have yet to isolate any particular misrepresentation or act of concealment. "Where the well-pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct, the complaint … has not shown that the pleader is entitled to relief.'" *Rehnberg v. OfficeMax, Inc.*, Case No. CIV 11-0645 WJ/RHS, 2011 WL 7609023 at *2

(D.N.M., Nov. 23, 2011) (quoting *Iqbal*, 556 U.S. at 679).  Count II will therefore be dismissed.

### III.   Plaintiffs Have Not Pled Sufficient Facts to Render Count III Plausible.

Plaintiffs contend that under the terms of the lease as well as New Mexico law, Defendant had a duty to render all hydrocarbons produced—including NGLs such as ethane, propane, and butane—marketable.  *See* Doc. 1-1 at ¶¶ 41-42.  According to Plaintiffs, the implied duty of marketability further requires Defendant to render NGLs marketable on its own, without passing the cost of rendering hydrocarbons marketable on to non-cost bearing interest holders such as Plaintiffs.  *See id.* at ¶¶ 43-44.

Defendant argues that Count III fails to state a cognizable claim and should be dismissed.  To the extent that Plaintiffs argue the duty of marketability arises from the facts, i.e., the language of the leases between the parties and/or the parties' intent at the time the leases were signed, Defendants point to *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 701, 858 P.2d 66, 77 (1993).  In that case, the New Mexico Supreme Court held that, "[t]he general rule is that an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter."  *Cont'l Potash*, 858 P.2d at 80.  For an implied covenant to an existing contract to be deemed valid, it "must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it."  *Id.*  Because there are no allegations in the Complaint concerning the parties' intent and no specific references to the text of the leases, Defendant contends that Plaintiffs' Count III is not a plausible claim for relief.  *See* Doc. 4 at 13-14.

9

Count III contains the following allegations relevant to Plaintiffs' claim of duty implied-in-fact:

> 40.    Under the terms of the Leases, Energen has a duty and covenant to market production to the mutual advantage of both the lessee and the Plaintiffs.
>
> 41.    Under the mutual covenants and obligations contained in the Leases and/or under state law, Energen has a duty to market condensate, natural gas, natural gas liquids and all other products derived from the hydrocarbons produced, in order to obtain the highest possible price to the mutual advantage of Energen and Plaintiffs.
> …
> 43.    Under its duty to market, Energen, as a mineral lessee, has an obligation to make diligent efforts to market the production from the subject leases in order to allow the royalty owner to realize fully in his royalty interest(s).
>
> 44.    Energen, as a lessee and working interest owner in the Class wells, has a duty to render the natural gas and other hydrocarbons marketable at its own expense, and not at the expense of Plaintiffs and other non-cost bearing interest owners.

Doc. 1-1 at 12-13.  Although a claim for breach of a duty implied-in-fact requires reference to the parties' intent as demonstrated through their negotiations, Plaintiffs' Complaint contains no facts in this regard.  Plaintiffs' complaint is limited to conclusory allegations that Defendant owes certain duties.  There are no factual allegations as to the parties' negotiations or resulting contractual terms.  While it is not necessary for Plaintiffs to plead facts which cannot be known without the benefit of discovery, Plaintiffs do not provide any supporting factual narrative that would render their implied-in-fact allegations plausible.  Consequently, Plaintiffs' claims for breach of the implied-in-fact duty to market, if any, will be dismissed.

Plaintiffs may never have intended to assert a claim for breach of an implied-in-fact duty to market hydrocarbons, preferring instead to rely upon an implied-in-law duty

to market hydrocarbons.  The New Mexico Supreme Court recently recognized, there are two ways that a contractual term may be implied.  *See Davis v. Devon Energy Co.*, 147 N.M. 157, 167, 218 P.3d 75, 85 (2009).  "[C]ourts may either be effectuating the parties' intentions by interpreting the written terms of an agreement and analyzing the parties' conduct," in which case the principles enunciated in *Continental Potash* would apply, or, courts "may be stating that a duty imposed by law creates an obligation on one or more of the parties to the agreement."  *Id.*  Looking to its earlier opinions concerning the implied duty to market hydrocarbons in *Darr v. Eldridge*, 66 N.M. 260, 263, 346 P.2d 1041, 1044 (1959) and *Libby v. De Baca*, 51 N.M. 95, 99, 179 P.2d 263, 265 (1947), the New Mexico Supreme Court held, "[w]e implied this legal duty on oil and gas producer in equity, without looking to the language of the agreements or other evidence of the parties' intentions."  The implied duty to market hydrocarbons is therefore implied into each royalty agreement, regardless of the parties' intent, as a matter of law.  *See Davis*, 147 N.M. at 167-68, 218 P.3d at 85-86.  Further, "*Continental Potash* is inapplicable to the implication of the marketable condition rule."  *See id.* at 167-68, 218 P.3d at 85-86.

Defendant argues that Plaintiffs' claim for breach of the implied-in-law duty to market should be dismissed based on *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091 (10th Cir. 2005).  *Elliott* involved claims by royalty owners like Plaintiffs against producers, like Defendant Energen, arguing that producers should not reduce their royalty payments by subtracting fees for processing gas.  *See id.* at 1100.  The plaintiffs in *Elliott*, like Plaintiffs in the present case, based their argument upon the implied duty to market.  *See id.* at 1113.  The Tenth Circuit affirmed summary judgment in favor of the defendant producers, holding as follows

> Elliott contends that under the implied duty to market Appellees bear the burden of all costs incurred to put the gas in a marketable condition including the cost of removing the NGLs from the gas.  Thus, Elliott argues any 39% processing fee should not be borne by the royalty owners.  This conception of the implied duty to market finds no support within New Mexico case law.  Nor is the claim saved by Elliott's assertion that the 39% fee is a production cost that must be borne by Appellees because there is no market for the unprocessed gas at the wellhead.  This duty imagined by Elliott is inconsistent with New Mexico law because the express terms of the royalty obligations direct the royalty to be paid on the value of the gas "at the well."  *See Cont'l Potash*, 855 P.2d at 80 (no implied covenants when subject matter addressed in contract); *Creson* [*v. Amoco Prod. Co.*, 129 N.M. 529], 10 P.3d [853,] 856, 859 (marketability goes to issue of compliance with royalty obligations).

*Id.* at 1113-114.  Whereas *Elliott* runs contrary to Plaintiffs' claims, its reasoning is based on *Continental Potash*, indicating that its primary precedential value exists as applied in cases concerning the implied-in-fact duty to market and not cases like this one, which concern the implied-in-law duty to market.  Whether or not the implied-in-law duty to market, recognized by the New Mexico Supreme Court in *Davis*, requires oil and gas producers to process hydrocarbons at their own expense, without passing costs on to non-cost-bearing interest owners is an open question under New Mexico law.[1]

In the present case, however, Plaintiffs have not pled sufficient facts to render their entitlement to royalty payments plausible.  *See* Part I, *infra*.  Therefore, the Court must dismiss Plaintiffs' Count III in its entirety.

---

[1] The New Mexico Supreme Court specifically declined to reach the issue in *ConocoPhillips Co. v. Lyons*, ___ P. 3d ___, 2012 WL 3711550 at *17 (N.M., Aug. 24, 2012), holding that it did not "need to decide whether the marketable condition rule is inherent in the implied covenant to market" and, further, that the *Lyons* opinion "should not be interpreted as affecting private oil and gas lease agreements" of the kind at issue in the present case.

**IV.**   **Plaintiffs Fail to State a Cognizable Claim For Violation of the New Mexico Oil and Gas Proceeds Payment Act.**

New Mexico law requires payment to Plaintiffs within "forty-five days after the end of the calendar month within which payment is received by payor for production." NMSA 1978, § 70-10-3.  The Tenth Circuit has held that in order to maintain a cause of action under the Act, a plaintiff must "allege a potentially successful claim for underpayment of royalties or theory of liability showing that it is 'legally entitled to such payments.'"  *Elliott*, 407 F.3d at 1120 (quoting NMSA 1978, § 70-10-3).  Because Plaintiffs' other claims should all be dismissed pursuant to the instant Motion, Defendant contends Plaintiffs' claim under the Act should also be dismissed.  *See* Doc. 20 at 16 (quoting *Elliott*, 407 F.3d at 1120).  The Court agrees and will therefore dismiss Count IV.

**V.**   **Plaintiffs Have Not Alleged Facts Sufficient to Support Their Claim for Bad Faith Breach of Contract.**

Defendants equate "bad faith breach of contract" with "breach of the implied covenant of good faith and fair dealing."  *See* Doc. 4 at 27 (quoting 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 700 (2d ed. 2011)).  Plaintiffs do not dispute this characterization, and the Court has found no reason to doubt it is true.

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."  *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 438, 872 P.2d 852, 856 (1994).  "[T]he implied covenant of good faith and fair dealing requires only that neither party injure the rights of the other party to receive the benefit of their agreement."  *Smoot v. Physicians Life Ins. Co.*, 135 N.M. 265, 268, 87 P.3d 545, 548 (Ct. App. 2003).  It is breached "only when a

party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar v. Prudential Ins. Co.*, 133 N.M. 669, 685, 68 P.3d 909, 925 (Ct. App. 2003).

However, because Plaintiffs in the present case have not sufficiently alleged the existence of a contract, *see* Part I, *infra*, the Court must dismiss this claim.

## VI.    Unjust Enrichment Is Not Available As a Remedy.

"To prevail on a claim for unjust enrichment, 'one must show that: (1) another has been knowingly benefitted at one's expense; (2) in a manner such that allowance of the other to retain the benefit would be unjust.'" *City of Rio Rancho v. Amrep Southwest Inc.*, 260 P.3d 414, 415 (N.M. 2011) (quoting *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct.App. 2000)).  Unjust enrichment applies to provide relief only where "a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros*, 3 P.3d at 698-99.  *See also Tom Growney Equip., Inc. v. Ansley*, 888 P.3d 992, 994 (N.M. Ct. App. 1994) (holding that unjust enrichment applies only where a contract does not exist and noting that the measure of damages "is significantly different from contract").  The Tenth Circuit has recognized that under New Mexico law, "the presence of a contract bars a claim for unjust enrichment." *Elliott*, 407 F.3d at 1117.

Plaintiffs assert that the measure of their unjust enrichment damages is "to be paid lawfully, under the terms of their leases and state law." *See Doc. 1-1* at 17, ¶ 65. Because "contracts control how royalties are to be paid," and Plaintiffs have alleged that such contracts exist in this case, Plaintiffs cannot recover for unjust enrichment. *See Elliott*, 407 F.3d at 1117.

**VII.    Plaintiffs Have Not Pled Facts Sufficient to Support Declaratory Judgment**.

Together with their unjust enrichment claim, Plaintiffs purport to seek a declaratory judgment. *See Doc. 1-1* at 17. Plaintiffs do not, however, plead the nature of the requested declaration. Instead, Plaintiffs assert they are "entitled to an order enjoining Energen for its current and historic payment methods and to order Energen to utilize a method of payment which results in Plaintiffs receiving an arm's length value of their hydrocarbons, without reduction for unlawful costs or charges." *Id.* In their prayer for relief, Plaintiffs "request a Declaratory Judgment governing, restraining, and enjoining Energen's activities." *Id.* at 18.

The Declaratory Judgment Act empowers, but does not require, federal courts to hear claims for declaratory judgment. *See* 28 U.S.C. § 2201(a). *See also, e.g., Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980 (10th Cir. 2012) ("Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon the courts the power, but not the duty, to hear claims for declaratory judgment."). Factors relevant to the Court's exercise of discretion in these cases include: (1) whether a declaratory judgment would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for race to res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *See Mid-Continent*, 685 F.3d at 980.

In the event the Court agrees to hear the declaratory judgment claim, Defendant Energen argues it should be dismissed because Plaintiffs have not precisely stated the nature of the declaration they seek. *See Doc. 4* at 29-30. Plaintiffs admit they have not specified the requested relief, but indicate they want a declaration ordering Defendant "to utilize a method of payment which results in Plaintiffs receiving an arm's length value of their hydrocarbons, without reduction for unlawful costs or charges." *Doc. 17* at 25. This, Defendant contends, is not a request for declaratory judgment, but a request for injunctive relief.

The Court agrees that Plaintiffs appear to be pursuing injunctive, rather than declaratory relief. In any case, however, the Court cannot declare the parties' rights or enjoin Defendant without examining the language of the parties' alleged lease agreements. As previously noted herein, Plaintiffs have not pled sufficient facts in support of their alleged contractual rights and Defendants' alleged contractual obligations. Thus, the Court must dismiss Plaintiffs' declaratory judgment claim for the same reasons that it dismissed Plaintiffs' breach-of-contract claim.

## VIII.   Plaintiffs Cannot Sustain Their Conversion Claim As a Matter of Law.

New Mexico law recognizes the tort of conversion as "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Muncey v. Eyeglass World, LLC*, 289 P.3d 1255, 1262 (N.M. Ct. App. 2012) (quoting *Nosker v. Trinity Land Co.*, 757 P.2d 803, 807-08 (N.M. Ct. App. 1988)). Plaintiffs premise their conversion claim upon Defendant's alleged "retention of the monies and profits resulting

16

from the sale of Plaintiffs' hydrocarbons." *See Doc. 1-1* at 18, ¶ 68.  As such, Plaintiffs'

conversion claim is based on exactly the same facts as alleged in their breach of contract

claim.

The Tenth Circuit has long held that where the facts alleged in support of a tort

claim are "precisely" the same as those alleged in support of a contract claim, the tort

claim will not lie.  *See Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984)

(noting that the parties had a contract defining their rights and duties, "thereby precluding

any extracontractual tort duty").  As the Tenth Circuit has explained,

> [t]he effect of confusing the concept of contractual duties,
> which are voluntarily bargained for, with the concept of
> tort duties, which are largely imposed by law, would be to
> nullify a substantial party of what the parties bargained
> for–limited liability.  Unless such bargains are against
> public policy (covered either by prohibitory statutes or
> well-defined, judge-made rules such as unconscionability),
> there is no reason in fact or law to undermine them.
> Indeed, it would be an unwarranted judicial intrusion into
> the marketplace.  No reason appears to support such a
> radical shift from bargained-for duties and liabilities to the
> imposition of duties and liabilities that were expressly
> negated by the parties themselves when they decided to
> abandon their status as legal strangers and define their
> relationship by contract.

*Isler*, 749 F.2d at 23.  *See also Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d

1197, 1201 (10th Cir. 1988) (indicating that *Isler* stands for the proposition that "no tort

duty can be imposed on a party where that party's same duties and rights are specifically

defined by contract").

Plaintiffs attempt to distinguish their conversion claim from their breach-of-

contract claim, arguing that the conversion claim is not meant to address conversion of

money, but rather the hydrocarbons themselves.  *See Doc. 17* at 27.  This is not a

meaningful distinction.  The parties' contract governs Defendant's liability, if any, for the sale of hydrocarbons, and Plaintiffs' conversion claim must be dismissed.

**IX.    Class Action Claims.**

Defendant Energen contends that Plaintiffs cannot continue to represent the class for the same reasons that their substantive claims must be dismissed–Plaintiffs have failed to adequately plead their class action claims under the *Twombly/Iqbal* standard. *See Doc. 4* at 33-34.  Plaintiffs claim that they have met the pleading requirements of FED. R. CIV. P. 23.  *See Doc. 17* at 28-30.  Defendants insist that their Motion argues not that the Rule 23 requirements are not met but rather that Plaintiffs have failed to adequately plead their class allegations. *See Doc. 20* at 23-24 ("Energen relies primarily on *Twombly* and *Iqbal* and their progeny that extend the plausibility standard of Rule 8(a) to class-action allegations.").

Although the Tenth Circuit has not specifically addressed this issue, Defendant Energen cites decisions from the District of New Jersey and the District of Pennsylvania holding that class allegations must comply with the pleading requirements of *Twombly* and *Iqbal*.  *See Doc. 4* at 33 (collecting cases).  In *Nicholas v. CMRE Fin. Serv.*, the United States Court for the District of New Jersey dismissed class allegations after finding that "the Complaint does not set forth a sufficient factual basis for its class allegations; indeed, the class allegations under Rule 23 in the Complaint are phrased as legal conclusions based on the language of the class action pleading requirements."  Civil Action No. 08-4857 (JLL), 2009 WL 1652275 at *4 (D.N.J., June 11, 2009).  *See also Hodczak v. Latrobe Specialty Steel Co.*, Civil Action No. 08-649, 2009 WL 911311, at *9

(W.D.Pa. Mar. 31, 2009); *Smith v. Lyons, Doughty & Velduius, P.C.*, Civil Action No.

07-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008).

At least one judge within the Tenth Circuit has held to the contrary, determining

that the *Twombly/Iqbal* standard does not properly apply to class action allegations.  *See*

*Griffin v. Home Depot USA, Inc.*, Case No. 11-2366-RDR, 2012 WL 38647 at *3 (D.Kan.

Jan. 9, 2012) (declining to apply *Twombly/Iqbal* analysis to a method of proving a class

action claim).  The Kansas court's approach finds support in legal literature, as well.  *See*

Robin J. Effron, *The Plaintiff Neutrality Principle: Pleading Complex Litigation in the*

*Era of Twombly and Iqbal*, 51 Wm. & Mary L. Rev. 1997, 2019 (2010) ("the formation

of a plaintiff class is not itself a cause of action or a claim for which relief can be

granted").  Both the Kansas Court and Ms. Effron in her law review article reference the

holding of the United States Supreme that "[i]n determining the propriety of a class

action, the question is not whether the plaintiff or plaintiffs have stated a cause of action .

. . but rather whether the requirements of Rule 23 are met."  *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 178 (1974).

The Court need not determine which line of reasoning is more persuasive in the

present case, however, because the present class has not been certified.  *See, e.g., Moniz*

*v. Cox*, Case No. 11-1790, at *5, 2013 WL 216070 (6th Cir., Jan. 22, 2013) (holding that

motion for class certification was properly denied as moot given the appropriate

dismissal of the representative's complaint for failure to state a claim); *Acquisto v.*

*Secure Horizons ex rel. United Healthcare Ins. Co.*, Case No. 12-11883, 2013 WL

272758, at *2, n.3 (11th Cir., Jan. 24, 2013) (where district court's Rule 12 dismissal of

class representative's substantive claims was appropriate, "we need not discuss the issue

of class certification"); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005)

(finding issue of class certification moot where the court granted summary judgment as

to the underlying claims of the class representatives).  Moreover, Plaintiffs are unable to

maintain a class action given the dismissal herein of all of their substantive claims.  *See*

*Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 216 (1974) ("To have

standing to sue as a class representative it is essential that a plaintiff . . . be a part of that

class, that is, he must possess the same interest and suffer the same injury shared by all

members of the class he represents"); *Rector v. City and County of Denver*, 348 F.3d 935,

949-50 (2003).

**Conclusion**

For the reasons set forth herein, the Court will grant Defendant's Motion and

dismiss Plaintiffs' Complaint.

**IT IS THEREFORE ORDERED** that Defendant Energen Resources

Corporation's Motion to Dismiss Plaintiffs' Complaint for Underpayment of Oil and Gas

Royalties *(Doc. 4)* is **GRANTED** without prejudice.

**IT IS FURTHER ORDERED** that, based on the dismissal of Plaintiffs'

Complaint for failure to state a claim, Plaintiffs' Motion to Certify Question of Law to

the New Mexico Supreme Court *(Doc. 23)* is moot.

_____
**UNITED STATES DISTRICT COURT JUDGE**